GARY M. RESTAINO
United States Attorney
District of Arizona
MICHAEL R. LIZANO
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: michael.perez-lizano@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 22-00896-JCH (DTF) |
| Plaintiff, | SENTENCING MEMORANDUM |
| vs. | |
| Luis Salvador Flores, | |
| Defendant. | |

Plaintiff, United States of America, by its undersigned attorneys, hereby submits its Sentencing Memorandum and respectfully asks the Court to accept the parties' negotiated plea agreement, which stipulates to a sentence of 84 months in the Bureau of Prisons for defendant Luis Salvador Flores.

The week before Thanksgiving in 2020, the defendant once again found himself in handcuffs, having been just arrested by law enforcement. The scenery had changed slightly (Tucson rather than the southern California desert town of Blythe), but the defendant's behavior, unfortunately, had not changed at all. Despite 22 prior felony convictions across 14 criminal cases mostly in California, which involved crimes ranging from drug dealing to illegal possession of firearms, on November 17, 2020, the defendant had put himself yet again in the middle of a drug trafficking investigation—this time, a federal one—while in possession of semi-automatic firearms, large-capacity magazines, and ammunition, none of which he is entitled to possess under the law. Draft Pre-Sentence Report ("PSR"), ECF No. 70, ¶¶ 4-14, 32-45.

Although at first the defendant was deceptive with the police about his identity, he eventually admitted who he is and what he was in the middle of doing when he got caught. *Id.* ¶¶ 6, 10. He had these firearms, magazines, and ammunition because he was on his way to oversee and provide "security" for a large methamphetamine sale in another part of Tucson. *Id.* ¶ 10. He was arrested before he could make it to the deal, and the drugs were never delivered. *Id.* ¶ 6. Federal agents knew the defendant was telling the truth about this part of the story because, unbeknownst to the defendant at the time, he had been interacting with an undercover agent who had recorded his communications with the defendant in the lead-up to the deal.

On May 2, 2022, the defendant pleaded guilty with an agreement to being a felon in possession of two firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The plea agreement, ECF No. 66, resulted from heavy negotiations between the parties. Although the defendant was willing to admit responsibility for his actions, having not been involved in the negotiation of the drug deal, he disputed that he knew its full scope, as the transaction was to involve the sale of 200 pounds of methamphetamine in exchange for $460,000. Complaint, ECF No. 1. The United States maintains it could have proved the defendant's knowledge of the scope of the methamphetamine deal beyond a reasonable doubt to a jury, but to conserve public resources, it agreed to charge bargain the case to a felony firearms count—with a lengthy stipulated prison sentence (84 months) as a condition.[1]

The parties' plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), ECF No. 66 at 2, which provides the government may "agree that a specific sentence is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines … does or does not apply." Fed. R. Crim. Proc. 11(c)(1)(C). Here, the parties' agreement does both, insofar as it provides for the stipulated 84-month term

---

[1] Despite the defendant's decades-long criminal history, the 84-month prison sentence to be imposed here will be the longest sentence ever imposed on him to date, with the second longest being an 80-month term imposed in California in 2007. PSR ¶ 39.

and that U.S.S.G. § 2K2.1 shall be used to determine the advisory Guidelines range *without* reference to its cross-referencing provision at U.S.S.G. § 2K2.1(c)(1)(A).  Plea Agreement, ECF No. 66 at 3.

The rationale for disregarding the (c)(1)(A) cross-referencing provision is twofold. First, despite the provision's plain language and its supporting commentary, Ninth Circuit case law appears to have elevated the factual showing required to impose the provision from showing mere presence of a firearm to showing its *actual use* in the commission of another offense.  *United States v. Myers*, 112 F.3d 406, 411 (9th Cir. 1997); *see also United States v. Sewalson*, 36 F.4th 832, 833 (8th Cir. 2022) (rejecting Ninth Circuit standard and remarking that "the conclusion in *Myers* is contrary to the plain meaning of the guideline"); *United States v. Varela*, 586 F.3d 1249, 1253-54 (10th Cir. 2009) (same; "[W]hile *Myers* may be the rule in the Ninth Circuit, such an approach is inconsistent with our case law.").

Second, assuming the facts here satisfied the elevated *Myers* standard, the (c)(1)(A) cross-reference still would require application of the drug trafficking guidelines (U.S.S.G. § 2D1.1) only if the resulting offense level from applying those guidelines is greater than the result from applying the firearms guidelines (U.S.S.G. § 2K2.1).  As discussed above, however, the parties have an unresolved factual dispute about the weight of the methamphetamine that is properly attributable to the defendant, given his role in the crime and that the transaction was interrupted before it could be completed.  Because drug weight drives the resulting offense level under the drug trafficking guidelines, without resolving this factual dispute, one cannot conclude that the drug trafficking guidelines necessarily do yield a higher offense level than the firearms guidelines yield.

Application of the cross-reference also is an academic issue because, no matter which set of guidelines applies (§ 2D1.1 or § 2K2.1), the resulting advisory range exceeds the 120-month statutory maximum punishment for the crime of conviction, which means that, in both cases, the resulting advisory range is 120 months in prison.[2]

---

[2] As discussed in the PSR, if the cross-reference is applied, the resulting prison range at

It also goes without saying that, while the Court is obliged to correctly calculate the Guidelines, the ultimate sentence is within the Court's discretion after accounting for the sentencing factors articulated in 18 U.S.C. § 3553(a).

For all these reasons, the parties carefully threaded the needle to craft an agreement that applies the firearms guidelines and reaches a substantively reasonable disposition: an agreed-upon sentence of 84 months in the Bureau of Prisons. The defendant here has a long history of engaging in especially serious crimes, stemming no doubt just as much from his own historical gang affiliation (PSR ¶ 59) as from his ongoing struggles with substance abuse (*id.* ¶ 69). Whatever the cause, however, the defendant, despite being almost 50 years' old, clearly still has not chosen to give up his criminal lifestyle. An 84-month prison sentence thus is needed to reflect the seriousness of his crime; protect the public; promote deterrence, respect for the law, and just punishment; and maintain parity with the kinds of sentences that such persons would receive for the same type of crime in other jurisdictions in the United States.

Respectfully submitted this 23rd day of October, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Michael R. Lizano*

MICHAEL R. LIZANO
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 23rd day of October, 2022, to:

All ECF Participants

---

Criminal History Category ("CHC") V is 324 months to 405 months. PSR ¶ 82. Under the plea agreement, after providing for enhancements and reductions, the total offense level is 27. Plea Agreement, ECF No. 66 at 3. At CHC V, the resulting range thus is 120 to 150 months.